Angela Rosado, por sí y como madre con patria potestad sobre sus hijos menores de edad, nombrados Francisco, Judith y Saul, de apellidos Flores y Rosado, demandantes y apelantes, *v.* La Comisión de Indemnizaciones a Obreros de Puerto Rico, integrada por Rafael Cintrón Lastra, José Coll Vidal, Joaquín A. Becerril, Prudencio Rivera Martínez y Luis Villaronga Charriez, demandada y apelada.

No. 366.—*Visto:* Noviembre 12, 1925. *Resuelto:* Julio 29, 1926.

Patrono y Empleado—Ley de Indemnizaciones por Accidentes del Trabajo—Naturaleza y Fundamentos de la Responsabilidad del Patrono—Daños Sufridos en el Curso de y como Consecufncia del Empleo—Clase de Daño que se Recibe—Muerte—Muerte no Causada por Enfermedad Ocupacional.—Cuando cae una llovizna mientras un albañil trabaja y éste enferma y muere en ausencia de prueba que demuestre una relación causal entre la enfermedad del obrero y la ocupación de su empleo o que indique que el caso sea una excepción a la regla general ya establecida en casos análogos, no cabe sostener tal enfermedad y muerte como actos o funciones inherentes al trabajo o por consecuencia del mismo.

Sentencia de *R. Díaz Cintrón,* J. (Ponce), desestimando la demanda, sin costas. *Confirmada.*

*Leopoldo Tormes,* abogado de los apelantes; *Hon. Attorney General, C. Llauger Díaz,* y *Emilio Aldrey,* abogados de la apelada.

El Juez Asociado Señor Franco Soto, emitió la opinión del tribunal.

La Comisión de Indemnizaciones a Obreros sobre acci-

dentes del trabajo en junio 29, 1923, dictó la siguiente resolución:

"En este caso de Francisco Flores, no se ha presentado solicitud de indemnización por el obrero ni por los herederos o beneficiarios del obrero, sin el cual documento la Comisión no puede considerar reclamación alguna, de acuerdo con la Ley.

"Pero, del estudio que hemos hecho del expediente de este caso, parece que la reclamación de tal documento es innecesaria.

"Según los informes Francisco Flores estaba trabajando como albañil en una obra de don Francisco Catalá en la calle 25 de julio, de la ciudad de Yauco, P. R., el día 20 de diciembre, 1921, mientras estaba trabajando cayeron unas lloviznas. Flores fué atacado más tarde de pulmonía.

"En el informe de nuestro investigador Sr. Barreras, se nos dice que mientras Francisco Flores trabajaba cayeron unas ligeras lloviznas, las que todos soportaron precisamente por ser menudas; que Flores se retiró a la media hora de haberse mojado sintiéndose enfermo, y por la noche salió a la calle, amaneciendo al día siguiente en estado grave muriendo el día 24 a las dos de la tarde.

"Obra en el expediente una partida de defunción expedida por el encargado del Registro Civil de Yauco, en la cual se certifica la muerte de Francisco Flores a consecuencia de 'pneumonia.'

"En un informe de baja del Dr. A. Ramírez Marini, se dice que el médico examinó al obrero Francisco Flores el día 22 de diciembre y lo encontró con un fuerte ataque de grippe, pero que aún no había complicaciones.

"La evidencia que tenemos en este caso, y que es la que hemos enumerado anteriormente, no prueba que la muerte de este obrero fuera causada por una enfermedad proveniente del trabajo que realizaba el obrero. La prueba es ineficaz para sostener la alegación que en una solicitud de indemnización pudiera ser hecha de que la muerte le ocurrió a este obrero a consecuencia de enfermedad ocupacional. Siendo esto así procede el archivo de este expediente."

En octubre 1, 1923, la Comisión dictó otra resolución que dice:

"En el caso de Francisco Flores, 17,334, la Comisión vista la moción presentada por la viuda del obrero fenecido acuerda la reapertura del caso, concediéndole así la oportunidad a los herederos de probar que la enfermedad y muerte del obrero provinieron del

trabajo que realizaba, siendo por cuenta de los peticionarios todos los gastos del caso.''

Abierto el caso nuevamente, la Comisión, después de examinar la prueba que fué aportada, finalmente dijo:

"En el caso de Francisco Flores, 17,334, la Comisión después de estudiar detenidamente la moción de reconsideración presentada y las declaraciones que en apoyo de la misma han sido sometidas, acuerda denegar la reconsideración pedida por cuanto no resulta comprobado que la muerte del obrero le haya sido causada por enfermedad ocupacional alguna sufrida en el curso y como una consecuencia del trabajo que realizaba.

"Comuníquese al peticionario.''

De esta última resolución apeló Angela Rosado como madre con patria potestad de sus tres hijos menores nombrados Francisco, Judith y Saul Flores, habidos en su matrimonio con Francisco Flores, para ante la corte de distrito, alegando, en síntesis: que Francisco Flores, de oficio albañil, el 20 de diciembre de 1921 trabajaba en las obras de Francisco Catalá, mientras trabajaba cayeron unas lloviznas, a consecuencia de las cuales le sobrevino una pulmonía de la cual falleció en el pueblo de Yauco el 24 de diciembre de 1921, y que Flores ''en el curso de su empleo sufrió el accidente en cuestión, con motivo del cual ocurrió su muerte, sin que el mismo hubiera cometido ninguna falta por la cual la ley expresamente privara a dicho obrero Francisco Flores, a sus sucesores, . . . . a recibir la indemnización.''

La Comisión contestó negando que el obrero Francisco Flores sufriera accidente alguno mientras trabajaba y en el curso de su empleo y que dicho accidente le ocasionara la muerte, y alegó además, entre otras defensas, que Flores falleció de una pulmonía, que no es una enfermedad proviniente y sufrida en el curso y como consecuencia del trabajo de albañil a que se dedicaba dicho obrero.

La corte inferior después de examinar el expediente tramitado ante la Comisión y de oir prueba *aliunde* ofrecida

por una y otra parte, resolvió el caso de acuerdo con la teoría de la demandada, o sea, que Flores no falleció de una enfermedad "proveniente y contraída en el curso y como consecuencia del trabajo de albañil a que se dedicaba," y declaró sin lugar la demanda.

Referiremos substancialmente lo que dicen los testigos de la demandante.

Francisco Catalá, que era el patrono del obrero, describe lo ocurrido de este modo:

"R.—Nada, él estaba bruñendo una cornisa así como esa y manejaba un aparato que pesa de 70 a 80 libras y en eso cayó un aguacero y al caer el aguacero se bajaron todos los que estaban en el andamio, se metieron debajo de la casa y allí yo me fuí para casa a tomar café y él le dijo a los demás compañeros: me voy que me siento enfermo. P.—¿Se lo dijo a usted también? R.—A los demás; cuando yo vine pregunté por él. P.—¿A usted no se lo dijo? R.—No, señor; él le dijo a los otros, yo pregunté: ¿dónde está Flores? y me dice: se fué porque cayó enfermo. . . . . P.—¿Usted vió que él se mojara? R.—Eso sí que no, porque él se mojó y se fué: cuando concluyó de caer el aguacero fué que yo fuí a la fábrica y pregunté por él y dicen: se fué porque estaba trabajando allí y dice que salió con un dolor en la espalda."

De este testigo aparece una declaración jurada en el expediente de la Comisión, la que fué utilizada por la demandante cuando la Comisión abrió de nuevo el caso. El testigo entonces dijo:

"Que el día 20 de diciembre de 1921 dicho albañil estaba pasando un aparato (cuyo nombre desconozco) para pulir la corniza de la pared del frente de la casa, trepado sobre un andamio. Que dicho aparato pesaría más de veinte libras, y al rato de estarlo pasando, y mientras estaba sudado, cayó un aguacero loco, que mojó a dicho obrero.

"Que yo estaba observando el trabajo que hacía dicho obrero, y vi cuando se mojó, y que en seguida se bajó del andamio donde trabajaba, en lo que pasaba el aguacero.

"Que como a la media hora de esta ocurrencia, el obrero me dijo éstas o parecidas palabras: 'Don Francisco, me voy para casa porque el mojarme me ha hecho daño. Sentí un frío y ahora tengo

un fuerte dolor en los hombros,' y en seguida Francisco Flores, el obrero de referencia, se fué para su casa, ofreciéndome volver a trabajar al otro día. Que dicho obrero no volvió al trabajo, porque siguió mal, enfermo de pulmonía, muriendo al poco tiempo.''

Ramón Figueroa, albañil que trabajaba en la misma obra, declaró:

"R.—Ese día lo único que sucedió que estaba arriba en la fachada trabajando y vino un aguacero y se mojó, y como a los diez minutos dijo que se iba porque el aguacero le había hecho daño: se fué, se acostó y a los cuatro días murió.''

Dijo también que Flores ''estaba halando una plantilla que tiene como dos pies, como 60 ó 70 libras de peso.''

Santia Fabiani declaró: que estaba de visita en la casa de Francisco Flores cuando éste llegó enfermo; que oyó cuando él dijo que venía malo y se quejaba de que tenía fiebre. Esta testigo también había prestado una declaración jurada sobre los mismos hechos, que la demandante la aportó como uno de sus elementos de prueba ante la Comisión. En ella dice que Flores en seguida que llegó a su casa se acostó y esputó la sangre y que desde que empezó a oscurecer hasta las doce de la noche ella permaneció en la casa, ayudando a asistirlo y que durante esa noche Flores quedó acostado siguiendo en estado de gravedad sin abandonar su lecho hasta que falleció.

Angela Rosado, esposa de Flores, entre otras cosas dijo:

"R.—Él llegó entre tres y cuatro de la tarde, estando la hermana Santia Fabiani en casa de visita y nosotros nos impresionamos al ver su llegada, porque él acostumbraba salir del trabajo a las cinco y al llegar dijo: me han cogido estas lloviznas, me han hecho daño, y lo toqué y estaba con mucha fiebre, pero al mismo tiempo se acostó, la hermana se fué y yo fuí a atenderlo.''

Fueron admitidas sin oposición las declaraciones juradas de los dos médicos A. Ramírez y José Arrache, que habían asistido al obrero y que habían sido prestadas ante la Comisión. El primero dijo que del examen que le hizo comprobó que estaba sufriendo un fuerte ataque de grippe y

que no siguió visitándole porque tuvo que ausentarse **para** Cabo Rojo, siguiendo asistiéndole el doctor Arrache y éste declaró que encontró a Flores enfermo con pneumonia (pulmonía).   Ambos médicos refieren que el paciente les manifestó que estaba trabajando en una casa de Francisco Catalá, que llovió de momento, se mojó y se sintió enfermo. El doctor Ramírez dijo además que cuando examinó a Flores no notó en él complicaciones, pero que la grippe podía convertirse de un momento a otro en pulmonía.

Por la otra parte se presentó la declaración del jefe del cuerpo médico de la Comisión de Indemnizaciones a Obreros, quien explicó que una pulmonía catarral era una enfermedad producida por microorganismos existentes en el aire, no siendo inherente al trabajo ni derivarse de ocupación alguna.   Aunque estas manifestaciones fueron objetadas por la demandante, prescindiendo de tal declaración, la prueba de la demandante no era bastante para demostrar una relación causal entre la enfermedad del obrero y la ocupación de su empleo, no apareciendo asimismo nada extraordinario que indique que este caso sea una excepción a la regla general que fué establecida en circunstancias parecidas en el caso de *Crespo* v. *Com. Indem.,* 33 D.P.R. 831, expresada así:

"Pero no hay nada que sugiera una relación de causa entre el hecho de que el demandante estuviera sudado al caer el aguacero y sus consecuencias.   El accidente alegado como causa próxima de los perjuicios recibidos es el aguacero que repentinamente cayó. El mero hecho de que el demandante estuviere sudado al caer el aguacero no cambia para nada la situación de modo que pueda servir de base para establecer una excepción a la regla general que excluye los accidentes que tienen lugar por las condiciones atmosféricas a las cuales todo el mundo está asimismo expuesto."

La declaración de Santia Fabiani diciendo que Francisco Flores llegó a su casa con fiebre y esputando la sangre poco después de haberse mojado, más bien es un indicio de que Flores ya se encontraba indispuesto o con alguna afección

gripal cuando trabajaba, siendo tal indisposición o afección catarral la causa próxima de su enfermedad y muerte y no como *acto o función inherente al trabajo o por consecuencia del mismo.*

El Juez Asociado Señor Hutchison, disintió.