ANTONIA RODRÍGUEZ, como madre con patria potestad sobre sus menores hijos JULIO Y JOSÉ ANTONIO LUGO, demandante y apelante, *v.* LA COMISIÓN DE INDEMNIZACIONES A OBREROS, demandada y apelada.

No. 3933.—*Visto:* Noviembre 4, 1926.   *Resuelto:* Diciembre 7, 1926.

1. PATRONO Y EMPLEADO—LEY DE INDEMNIZACIONES POR ACCIDENTES DEL TRABAJO —PROCEDIMIENTOS—PROCEDIMIENTOS DE LA COMISIÓN DE INDEMNIZACIONES A OBREROS—APELACIÓN CONTRA SENTENCIAS DICTADAS POR LOS TRIBUNALES AL REVISAR AQUELLOS—REVISIÓN—CUESTIONES DE HECHO Y CONCLUSIONES.— Atendidas las circunstancias concurrentes en el caso de autos, *se resolvió* que la corte inferior razonablemente concluyó que el obrero padecía de tuberculosis pulmonar crónica y que falleció de dicha enfermedad.

2. PATRONO Y EMPLEADO—LEY DE INDEMNIZACIONES POR ACCIDENTES DEL TRABAJO —NATURALEZA Y FUNDAMENTOS DE LA RESPONSABILIDAD DEL PATRONO—LESIONES O DAÑOS SUFRIDOS EN EL CURSO DE Y COMO CONSECUENCIA DEL EMPLEO— CAUSA DEL DAÑO RECIBIDO.—Cuando hay base para presumir lógicamente que la enfermedad de un obrero—tuberculosis pulmonar—data de tiempo, y que la muerte del obrero se debió a una hemoptisis causada por dicha enfermedad, la hemorragia en sí no puede considerarse como el accidente que produjo la muerte.

3. PATRONO Y EMPLEADO—LEY DE INDEMNIZACIONES POR ACCIDENTES DEL TRABAJO —NATURALEZA Y FUNDAMENTOS DE LA RESPONSABILIDAD DEL PATRONO—LESIONES O DAÑOS SUFRIDOS EN EL CURSO DE Y COMO CONSECUENCIA DEL EMPLEO— ENFERMEDADES PROVENIENTES DE EMPLEOS U OCUPACIONALES.—Si una enfermedad es o no ocupacional depende de las circunstancias especiales de cada caso y la legislación aplicable al mismo.

4. PATRONO Y EMPLEADO—LEY DE INDEMNIZACIONES POR ACCIDENTES DEL TRABAJO —NATURALEZA Y FUNDAMENTOS DE LA RESPONSABILIDAD DEL PATRONO—LESIONES O DAÑOS SUFRIDOS EN EL CURSO DE Y COMO CONSECUENCIA DEL EMPLEO— ENFERMEDADES PROVENIENTES DE EMPLEOS U OCUPACIONALES.—La tuberculosis pulmonar no es una enfermedad ocupacional a menos que estando dicha enfermedad paralizada (*arrested*), suceda un accidente que la haga surgir nuevamente, en cuyo caso se concede indemnización por la incapacidad aumentada con su reaparición.

5. PATRONO Y EMPLEADO—LEY DE INDEMNIZACIONES POR ACCIDENTES DEL TRABAJO —NATURALEZA Y FUNDAMENTOS DE LA RESPONSABILIDAD DEL PATRONO—LESIONES O DAÑOS SUFRIDOS EN EL CURSO DE Y COMO CONSECUENCIA DEL EMPLEO— EN GENERAL.—La debilidad congénita o la pre-existencia de ciertas enfermedades no impiden que en caso de un accidente que cause un daño personal o la muerte del obrero sea compensable.

6 PATRONO Y EMPLEADO—LEY DE INDEMNIZACIONES POR ACCIDENTES DEL TRABAJO —NATURALEZA Y FUNDAMENTOS DE LA RESPONSABILIDAD DEL PATRONO—LESIONES O DAÑOS SUFRIDOS EN EL CURSO DE Y COMO CONSECUENCIA DEL EMPLEO— RELACIÓN CAUSAL ENTRE EL ACCIDENTE Y EL DAÑO PERSONAL O MUERTE.— Para tener derecho a la compensación que prescribe la ley es necesario que exista una relación causal entre el accidente y el daño personal o muerte del obrero.

SENTENCIA de *R. H. Todd, Jr.*, J. (Ponce), declarando sin lugar la demanda, sin costas. *Confirmada.*

*Arjona & Arjona*, abogados de la apelante; *Attorney General George C. Butte, C. Llauger Díaz* y *Emilio Aldrey*, Sub-Procuradores, abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR FRANCO SOTO, emitió la opinión del tribunal.

Eleuterio Lugo, de oficio panadero, mientras trabajaba en cierta panadería, como horneador, en la fabricación de pan, sufrió una fuerte hemorragia por la boca, a consecuencia de la cual murió pocos momentos después. Sus hijos naturales reconocidos Julio y José Antonio Lugo, representados por su madre natural Antonia Rodríguez solicitaron de la Comisión de Indemnizaciones a Obreros se les concediera una indemnización por la muerte de su padre.

La Comisión de Indemnizaciones a Obreros negó la solicitud basándose en que las circunstancias del caso no establecían una enfermedad ocupacional. Contra esta negativa los peticionarios acudieron a la corte inferior mediante demanda, y ésta fué declarada sin lugar, sosteniéndose por la corte la decisión de la Comisión.

La apelante señala en su alegato la comisión de cinco errores, los que sin embargo pueden reducirse a dos, o sea, que la corte inferior erró al declarar que la hemorragia causante de la muerte de Eleuterio Lugo fué producida únicamente por una tuberculosis pulmonar crónica, y que erró al estimar que la hemorragia a consecuencia de la cual falleció el obrero no constituye un accidente del trabajo.

Examinaremos conjuntamente esos errores.

[1] El Dr. Gabriel Rigau asistió pocos instantes después de sobrevenir la hemorragia a Eleuterio Lugo, y su declaración en parte, dice:

"R.—Yo hallé una hemorragia intensa en la cavidad pleural izquierda y el pulmón tenía una cavidad grande en su parte superior hacia el ápice, cubierta por sangre toda la región. P.—A su lado izquierdo dice usted que vió? R.—Sí, señor; al lado izquierdo

la pleura estaba algo inflamada, ya crónica, tenía sus fibrosidades y había algunas adherencias hacia la aorta, la arteria grande que está cerca del pulmón.    Juez: P.—¿Qué fué lo que usted dijo después de la hemorragia interna?    R.—Encontré una cavidad en el pulmón, en su parte superior, un estado de pleuresía crónica, la pleura inflamada ya crónica y algunas adherencias hacia la aorta; no encontré ninguna otra lesión, me limité al examen de los pulmones y eso fué lo que hallé, diagnosticando patológicamente como una muerte debida a la intensa hemorragia y que la lesión probablemente era una tuberculosis pulmonar crónica; ese fué mi diagnóstico patológico.    P.—¿Muerte por hemorragia?    R.—Sí, señor; y que la cavidad pulmonar, la lesión pulmonar era probablemente una tuberculosis crónica.    (Demandante)    P.—¿Probablemente?    R.— Sí, señor.    P.—¿Existía la probabilidad de que no fuera una tuberculosis crónica también, es decir, existía la probabilidad contraria? R.—Podría ser un absceso de otro origen, podría ser un absceso séptico, una cavidad séptica.    (Dmdo.):—P.—¿Entonces la conclusión técnica suya es de que la muerte se debió a la hemorragia causada por una tuberculosis crónica?    R.—Sí, señor.''

La apelante alega que las manifestaciones del médico contradicen la conclusión que sentó la corte inferior de que Eleuterio Lugo falleciera únicamente a consecuencia de tuberculosis pulmonar crónica.    Estamos conformes, desde luego, que el diagnóstico del médico no fué categórico en cuanto al origen de la gran cavidad que encontró en uno de los pulmones del obrero fallecido, pero si no perdemos de vista que en la demanda se admite que últimamente Lugo estaba ''bastante resentido en su salud'' y que otros testigos afirman que Lugo, poco antes de su muerte, no trabajaba como un empleado regular sino ocasionalmente, para poder descansar, es razonable admitir que por el examen de la prueba en conjunto la corte inferior pudo establecer, como así lo hizo, la conclusión de que Lugo padecía de tuberculosis pulmonar crónica y que falleció de esta enfermedad, siendo la hemorragia un síntoma de la misma, produciendo como una consecuencia la muerte.

[2] La cuestión relativa a que se considere la hemorragia en sí como el accidente que produjo la muerte, por el exceso

del esfuerzo físico que hacía el obrero en su trabajo, es tomar el efecto por su causa. Y la apreciación del mismo como algo imprevisto para caracterizarlo como un verdadero accidente no es proposición que pueda sostenerse. La existencia de una lesión tan extensa como la que reveló la autopsia en el pulmón izquierdo de Lugo lleva la presunción lógica que la enfermedad databa de tiempo, tal vez de años, y no podía ser de otro modo cuando la apelante en su demanda reconoce que la salud del obrero estaba quebrantada. El argumento asimismo de la apelante de que "si la hemorragia hubiera sido fatal y que si el curso forzoso de la enfermedad que padecía Eleuterio Lugo hubiera. tenido que concluir, indefectiblemente, en una hemorragia que le causara la muerte, esa hemorragia causal de la muerte, que podíamos llamar desenlace, hubiera ocurrido más o menos tarde, pero nunca en el momento que ocurrió . . . ." no es para una seria refutación. Aun para los profanos es sabido que la hemoptisis es a veces frecuente en los pacientes de tuberculosis incipiente, en un período en que los signos físicos de esta desgraciada enfermedad no son aún apreciables, o bien ella se puede presentar en el curso de la enfermedad, ya una o repetidas veces. Aun en reposo y con los más minuciosos cuidados, la misma enfermedad las origina sin nada externo que las estimule. Siendo esto así, tanto el razonamiento que luego hace el abogado de la apelante, así como las citas en que se apoya, son más bien adversas a su contención al referirse al carácter fortuito de todo accidente. A este efecto, en la página 17 de su alegato, el abogado apelante se expresa así:

" 'Fortuito' se define como que 'ocurre por casualidad en contrario a designio; que sucede o tiene lugar sin ninguna causa; por accidente; casual; y un caso fortuito se dice que es un caso contingente o accidental.'

"Los casos ingleses no hacen distinción alguna entre las palabras accidente y acto fortuito, usadas en algunas leyes; pues se dice en el último caso mencionado en respuesta a la contención que

en el mismo se hizo que para que una lesión ·esté comprendida en las disposiciones de la Ley Inglesa debe ser causada por algún acontecimiento fortuito y externo, y que 'la palabra "accidente" es una palabra popular de un significado muy amplio. Esta palabra que originalmente era usada tan sólo por personas versadas en gramática, ha sido usada desde los tiempos del Dr. Johnson hasta el presente para significar "algo imprevisto, que ocurre por casualidad o por accidente." ' Si durante cuatro años un' hombre ha usado con éxito sus músculos para levantar algún peso, y debido quizá a un descuido, tal vez a un resbalón, o a otra causa que no sea enfermedad, pierde el uso de los músculos ·que siempre habían trabajado bien, y si a una persona de inteligencia mediana se le preguntara qué le había sucedido a ese hombre, contestaría que había sufrido un 'accidente,' y yo creo que esa palabra estaría correctamente usada. Para mí significa lo mismo que si ese hombre hubiese estado usando una cuerda lo suficientemente fuerte para el fin a que se dedica y por exceso de peso o por halarse repentinamente, la cuerda se quebrara y una viga le cayera encima. Eso sería un accidente. En un caso el accidente es causado por la cuerda; en el otro por los músculos. En cada caso hay algo adecuado para el trabajo a que se le dedica, pero sucede lo inesperado, la cuerda o los músculos se rompen y ocurre un accidente. A mi manera de pensar, en la palabra 'accidente' siempre hay un elemento de lesión. En cuanto a la palabra 'fortuito,' no creo que es necesario hablar mucho. Si la lesión es causada por una enfermedad, es claro que el peticionario no tendría derecho a recompensa alguna, pero creo, como cuestión de hecho, que el hombre no tenía enfermedad alguna. En realidad no se argumentó seriamente que estuviera enfermo. 'Fortuito' quiere decir 'accidental,' 'casual,' 'que ocurre por casualidad'; y ya yo he dicho en mi opinión que esta lesión fué causada por un acontecimiento accidental y fortuito. Para determinar si la lesión ha sido causada o nó por un accidente, uno tiene que distinguir entre lo que tiene que ocurrir y lo que no tiene necesariamente que ocurrir en el curso de un empleo. Si tiene que ocurrir, no es un accidente, pero si no tiene que suceder, entonces ahí está el elemento fortuito y ahí está el accidente." 1 Honnold on Workmen Comp., 286–287–288.

[3, 4] Si examinamos las autoridades se puede notar que existe un conflicto en las decisiones en relación con las enfermedades que se han considerado hasta ahora como acci-

dentes del trabajo.   En 28 R.C.L. pág. 794, la jurispruden-
cia se resume así:

"Si bien las opiniones de los casos publicados más bien justifi-
can la decisión a que se ha llegado, haciendo referencia a la expre-
sión 'que provengan del empleo y ocurran dentro del curso de éste,'
sin embargo, un número considerable de opiniones descansa en el
significado de la palabra 'lesión,' 'lesión personal' o 'lesión por ac-
cidente.'   De acuerdo con la jurisprudencia prevaleciente no es esen-
cial que la lesión sea de tal carácter que presente signos externos o
aparentes de su existencia.   Y si bien algunas cortes sostienen que
el estatuto no autoriza el pago de una compensación cuando la in-
capacidad resulta de una enfermedad, como por ejemplo, pulmonía,
reumatismo, fiebre tifoidea, se ha resuelto en la mayoría de los es-
tados que la fraseología de las leyes de indemnizaciones a obreros
es bastante amplia para incluir enfermedades no provenientes del
empleo, como pulmonía, fiebre tifoidea, reumatismo, ántrax, o neu-
ritis óptica que cause la pérdida de la vista.   Pero generalmente se
ha resuelto que enfermedades que son calificadas como provenientes
de empleo no dan derecho a compensación en ausencia de un esta-
tuto que lo disponga así expresamente.   De acuerdo con esta teoría
no puede haber compensación alguna por enteritis, eczema, *plumbism*
o envenenamiento con plomo, neurosis proveniente de presión en el
plexo braquial, o un agotamiento general debido a exceso de tra-
bajo.   Se ha declarado que tales lesiones no están comprendidas en
los términos 'lesión' o 'lesión personal.'   Sin embargo, en algunos
casos se ha resuelto que el estatuto incluye enfermedades provenien-
tes de industrias o de empleos.   Si bien hay casos que resuelven lo
contrario, se ha decidido generalmente que una dislocación o frac-
tura resultante de esfuerzos exagerados es una lesión por la cual
debe concederse compensación.   De conformidad se ha concedido com-
pensación en caso de hemorragia cerebral y ataque de nervios.   Se
ha resuelto que la frase 'lesión personal' incluye hernia producida
por esfuerzos exagerados.''

No obstante las diferencias de interpretación en las di-
versas jurisdicciones, dependiendo sin duda de la fraseolo-
gía *sui generis* de cada estatuto, es lo cierto que la tubercu-
losis pulmonar no se ha considerado como enfermedad ocu-
pacional, a menos que ocurra lo que refiere la apelante en

el caso de *Birk* v. *Matson Navigation Co.,* 2 Cal. I.A.C.
Dec. 177, diciéndose:

"Cuando un empleado ha sufrido previamente de tuberculosis
pulmonar, enfermedad que había estado paralizada, y al suceder el
accidente que le causó la fractura de una costilla tal tuberculosis
surge nuevamente, se concede compensación por la incapacidad au-
mentada debido a la reaparición de la tuberculosis."

Y no puede ser más lógica la decisión de este caso en
nada semejante al de autos.

[5] Finalmente estamos de acuerdo con la apelante que
la debilidad congénita o la preexistencia de ciertas enferme-
dades no impiden que en caso de un accidente que cause
un daño personal o la muerte del obrero, sea compensable.
Pero la cita que hace la apelante para corroborar su con-
clusión tampoco es favorable a este caso, pues más bien lo
excluye. La cita dice lo siguiente:.

"Es un principio fundamental que el patrono toma al empleado
sujeto a su condición física al empezar a trabajar. Se concede com-
pensación no solamente para la protección de empleados que estén
en condición física normal, sino también para la de aquellos que
estén en un estado subnormal, excepto en casos excepcionales cuando
a consecuencia de enfermedades o desórdenes físicos, tales como
tuberculosis o sífilis, un trabajador lesionado sufre por un período
muy en exceso del que hubiese sufrido si hubiese gozado de buena
salud, casos en los cuales se concede compensación únicamente por
el período máximo que razonablemente quedaría incapacitada una
persona que estando en condición física normal sufriera el mismo
accidente. Se desprende que ni una debilidad congenital ni una
enfermedad preexistente hacen no compensable una lesión recibida
en condiciones que de lo contrario sería compensable." 1 Honnold
on Workmen Comp., 302–304.

[6] Convenimos además con la apelada que los casos de
*Crespo* v. *Comisión de Indemnizaciones a Obreros,* 33 D.
P.R. 831, y *Rosado* v. *Comisión de Indemnizaciones a Obre-
ros,* 35 D.P.R. 985, tienen aplicación a este caso. En ellos
quedó establecido el principio de que debe existir una rela-
ción de casualidad entre el accidente y el daño personal o

muerte del obrero para que se tenga derecho a la compensación que prescribe la ley.

*Por todo lo expuesto, debe confirmarse la sentencia apelada.*

El Juez Asociado Sr. Hutchison no tomó parte en la resolución de este caso.