Petra Torres, demandante y apelante, *v.* Comisión de Indemnizaciones a Obreros, demandada y apelada.

No. 4896.—*Sometido:* Diciembre 4, 1929. *Resuelto:* Junio 24, 1930.

*José Soto Rivera*, abogado de la apelante; *Attorney General James R. Beverley* y *Emilio Aldrey, Subprocurador*, abogados de la apelada.

El Juez Asociado Señor Hutchison, emitió la opinión del tribunal.

La corte de distrito, después de celebrar un juicio sobre los méritos del caso, desestimó una reclamación por $4,000 previamente rechazada por la Comisión de Indemnizaciones a Obreros.

Hubo un marcado conflicto de prueba respecto a la fecha del accidente, el que ocurrió, bien el 4 de mayo de 1925, o en mayo 4, 1926.

El juez de distrito llegó a la conclusión de que Santiago Morales se cayó de un árbol el día 4 de mayo, 1926, y falleció el 10 de diciembre. Cita la declaración del Dr. García Ubarri en el sentido de que estaba empleado en Río Piedras en mayo de 1925 y asistió a Morales mucho tiempo después del día de la lesión, época para la cual Morales padecía de tuberculosis pulmonar. El *ratio decidendi* de la relación del caso y opinión está revelado por el siguiente extracto:

"Si desde mayo de 1925, el obrero padecía de tuberculosis pul-

monar, según dijo el Dr. García Ubarri, y el accidente ocurrió en mayo de 1926 y su muerte en diciembre del mismo año, no creemos que pueda imputarse la enfermedad al accidente sufrido, y nos parece que este caso cae de lleno dentro de la teoría sentada por el Tribunal Supremo en el caso de *Rodríguez* v. *Comisión de Indemnizaciones a Obreros*, 36 D.P.R. 45.''

El Dr. García Ubarri no dijo que Morales tuviera tuberculosis desde el 4 de mayo de 1925. La aproximación más cercana a una manifestación de esa naturaleza en el testimonio de este testigo ha de hallarse en un coloquio habido inmediatamente después de calificarse como perito. Dice así:

''P. Dígame, doctor, allá para el año 1925, para el mes de mayo, ¿dónde trabajaba usted?—R. Como médico de la Comisión de Indemnizaciones a Obreros.—P. ¿Tuvo oportunidad de conocer al obrero Santiago Morales?—R. Sí, señor.—P. ¿Con motivo de qué lo conoció usted?—R. Yo supe de ese caso como consecuencia de una carta que recibí de López Domínguez, y cuando fuí allá encontré que era un caso tuberculoso. Entonces me manifestó la familia que fué debido a una caída, pero no se reportó cuando se dió la caída, sino mucho después de estar enfermo, de estar declarados todos los síntomas de tuberculosis.—P. ¿Lo vió después?—R. Mucho tiempo después.— P. ¿Como cuánto tiempo después?—R. Sé que recibí una comunicación de López Domínguez, Director de la Estación Experimental, diciendo que había un caso de enfermedad y quería que yo lo viera y me manifestó que esa enfermedad le provenía a consecuencia de una caída.—P. ¿Cuándo se personó el obrero en la oficina?—R. No, si está reportado en la casa.—P. ¿Éste es el *report* suyo?—R. El informe mío; yo lo informo ahí.—P. ¿qué clase de tuberculosis tenía este hombre? R.—Pulmonar.—P. ¿No es de ésas que llaman galopante?—R. Yo creo, como yo no lo conocía, yo le pregunté la historia clínica, y después que continuó el tratamiento, mucho después supe que había muerto tuberculoso.''

Una solicitud sin firma, o la primera parte de un documento fragmentario consumido parcialmente por el fuego, pero identificado por el Dr. García Ubarri, especifica el 4 de mayo de 1925 como la fecha del accidente. La segunda parte, reservada para el informe del patrono, aparece en blanco. Y la tercera parte del mismo documento, que aparece suscrita—y es de presumirse que fuera llenada—por el

Dr. García Ubarri, fija el 4 de mayo de 1926 como la fecha del accidente. Cita el 16 de mayo de 1926 como la fecha en que se practicó el primer examen médico. Indica que el peticionario podría regresar a su trabajo el 22 de mayo de 1926.

Una resolución de la comisión, en octubre 10 de 1925, se basa en un informe rendido por el médico director de ese organismo, especificando que la reclamación se refiere a un accidente ocurrido el 4 de mayo de 1925, pero es de fecha 5 de mayo de 1926, o sea, un año y un día después del accidente, y que durante ese tiempo no se presentó reclamación ni se dió paso alguno tendente a obtener resarcimiento de la comisión. Partiendo de la teoría del juez de distrito, de que Morales padecía de tuberculosis galopante en mayo de 1925, o en cualquier tiempo durante ese año, es más fácil creer que los documentos que especifican el 4 de mayo de 1925 como la fecha del accidente están equivocados a este respecto que el creer que Morales, no obstante su seria enfermedad, demorara la presentación de su solicitud hasta mayo de 1926.

Para los fines de esta opinión asumimos con la apelada y el juez de distrito que sólo hubo un accidente, y aceptamos la conclusión a que llegó el juez de distrito de que este accidente ocurrió en mayo de 1926.

El Dr. García Ubarri también identificó una serie de certificaciones fechadas julio 16, 23 y 31, agosto 6, 13, 20 y 27, septiembre 3, 10, 17 y 24, octubre 1, 15, 22 y 29, noviembre 6, 19 y 26 y diciembre 3, respectivamente. En cada una de estas 19 certificaciones dice:

"El individuo Santiago Morales, a quien he visto hoy, sigue mejor de la lesión recibida, por lo cual no puede trabajar."

Es mucho más fácil creer que el Dr. García Ubarri en realidad no había examinado a Morales en cada una de las fechas especificadas en cada una de las certificaciones, que creer que él libró esas 19 certificaciones después de haber

comprobado en 1925 que Morales se estaba muriendo de tuberculosis galopante. El médico director practicó su examen a principios de agosto de 1926 y halló la enfermedad en un estado extremadamente avanzado.

La propia declaración del Dr. García Ubarri que ya hemos citado en parte del récord taquigráfico, es que se enteró del caso con motivo de una carta y, que al practicar un examen halló que se trataba de un caso de tuberculosis; que la familia le manifestó que era a consecuencia de una caída, pero que no le informaron la fecha en que ocurrió; que esto sucedió mucho tiempo después de la caída; que se trataba de un caso de tisis pulmonar, en opinión del testigo, de tuber-culosis galopante; que después, mucho más tarde, el testigo supo de la muerte del paciente de tuberculosis; que la enfermedad estaba en estado avanzado; que esto fué mucho tiempo después del accidente; que antes de esto el testigo nada sabía sobre la caída; que la enfermedad pudo sobrevenir a consecuencia de la caída, dependiendo de la intensidad del golpe; que con anterioridad a esta visita el testigo no había asistido al peticionario; que el declarante no recordaba el año; que Morales murió en 1926, ocho meses después de la caída; y que el declarante no vió a Morales el día de la caída sino mucho después. Un certificado de defunción que aparece suscrito por el Dr. García Ubarri expresa que Morales falleció de tuberculosis en diciembre 9, 1926. Si García Ubarri recibió o no la carta y practicó en la persona de Morales el primero y único examen algún tiempo después de expedir la certificación de diciembre 3 relativa a la con-tinua mejoría, y antes de firmar el certificado de defunción, o en una fecha anterior, no podemos estar de acuerdo con el criterio de que su declaración establece el hecho de que practicó un examen en fecha anterior al 4 de mayo de 1926. Por el contrario, levanta una fuerte sospecha de que nunca practicó examen alguno antes del 3 de diciembre de 1926. La relación del caso y opinión emitida por el juez de distrito

no sienta ninguna otra base para la sentencia declarando sin lugar la demanda.

La declaración del médico director, al igual que su informe anterior a la Comisión de Indemnizaciones a Obreros, procede sobre la hipótesis de varias contusiones insignificantes recibidas el 4 de mayo de 1925, de las cuales no reveló huella alguna un examen médico practicado poco tiempo después del accidente. Sobre esa base, este testigo llega a la conclusión de que no hubo relación causal entre la lesión y la enfermedad. De ser correcta la premisa, la conclusión es bastante lógica. Empero, la repregunta del dicente termina con la siguiente pregunta y contestación:

"Y, doctor, el estado en que conviven nuestros trabajadores, malas condiciones, mal alimentados, con propensión a la tuberculosis, ¿no pudo desarrollársele un proceso fulminante de tuberculosis, si ese obrero recibe golpes que le ocasionaran una hemorragia, una gran pérdida de sangre por la boca, falto de alimentos desde el mismo momento en que cae, un obrero que tiene diez hijos, que los ve faltos de protección por parte de su padre, ese sufrimiento y esa falta de alimentos no pueden acelerar el proceso, aumentar el desarrollo de la tuberculosis?

"Hay tuberculosis de curso rápido, indudablemente, tuberculosis galopante."

Echando completamente a un lado la declaración del Dr. García Ubarri, la aseveración no contradicha del Dr. Fernández García demuestra que por lo menos el 90 por ciento de nuestra población está predispuesta a la tuberculosis, y el hecho adicional de que un golpe en el pecho puede producir, y frecuentemente produce, una tuberculosis galopante. Respecto al último hecho mencionado, la declaración de otro perito, el Dr. Soto Rivera, se pronuncia en igual sentido. Las declaraciones no controvertidas de testigos oculares del accidente es que una hemorragia pulmonar siguió a la caída. Estos testigos dicen que el accidente ocurrió el 4 de mayo de 1926, y que con anterioridad a dicha fecha Morales era un hombre sano y vigoroso. El había estado empleado en la

Estación Experimental durante unos diez años. Si estos testigos estaban equivocados, bien respecto a la fecha del accidente o al estado físico anterior de Morales, ello pudo fácilmente traerse a colación durante el juicio.

En ausencia de una demostración satisfactoria de que se hubiese desarrollado la tuberculosis antes de la fecha del accidente, la inferencia es que esa enfermedad se desarrolló posteriormente como resultado del mismo. Nada hay en el caso de *Rodríguez v. Comisión de Indemnizaciones a Obreros, supra,* que excluya un fallo a favor de la parte demandante en el presente caso.

*Debe revocarse la sentencia apelada.*

El Juez Asociado Señor Aldrey no intervino.