GODFREY (ALSO KNOWN AS FRED) SORENSON v.
LA POMPADOUR, INC. AND ANOTHER.[1]

December 29, 1933.

No. 29,774.

[1]Reported in 251 N. W. 901.

See 187 Minn. 665, 246 N. W. 114.

*Cobb, Hoke, Benson, Krause & Faegre* and *J. G. Stirn,* for relators.

*A. E. Bryngelson,* for respondent.

*HOLT, Justice.*

Certiorari to review a decision of the industrial commission awarding respondent compensation.

It is admitted that respondent was in the employ of relator La Pompadour, Inc., a corporation, as stationary engineer and mechanic at its plant, when on December 28, 1929, an explosion of the oil burner therein occurred, causing severe burns on respondent's hands and face; that because thereof he became disabled; and that relators paid him compensation therefor up to May 30, 1931, including hospital and medical services rendered him on account of his injuries. Payments ceased because relators deemed that the disability from which respondent was suffering in 1931 did not result from the burns. This proceeding claiming compensation for total disability was instituted in July, 1931. Hearings were had, and compensation was awarded. On certiorari this court remanded the case for a rehearing. Sorenson v. La Pompadour, Inc. 187 Minn. 665, 246 N. W. 114. A rehearing has been had and a decision rendered awarding compensation for total disability.

The only finding challenged as unwarranted by the evidence is this:

"That as a result of said accident and injury the employe herein was totally disabled from and after the 28th day of December, 1929, up to and including the 18th day of January, 1933, and that disability continued beyond said last mentioned date."

The medical experts are virtually in agreement that respondent's disability is caused by combined degeneration of the spinal cord. The real question now presented is: Does the evidence support

the finding that the accident caused or produced the now existing degeneration of his spinal cord? We reach the conclusion that it does. 'The medical experts are sharply divided on this proposition. They were all men of high standing and specialists in the fields involved in the inquiry. Relators are insistent that because certain medical experts supporting respondent's theory could not refer to a case in medical literature indicating that burns caused combined degeneration of the cord the conclusion of the witness that it did was mere speculation and conjecture. If this be so, we merely suggest that in the practice of medicine a new experience or discovery is not improbable.

It is also strongly urged that the evidence on the rehearing conclusively established that the tumor disclosed by the X-rays is the cause of the degeneration of the spinal cord. All medical experts are in accord that external burns on the body may produce internal disturbances such as ulcers of the stomach. One theory is that the burns and destruction of tissue produce toxin, which is absorbed into the blood stream and may find lodgment and infect any organ of the body. Some of relators' experts concede that external burns may injuriously affect the brain. There is an intimate connection between the brain and spinal cord. A medical expert must use his reason and draw conclusions from a consideration of various facts and circumstances. If burns cause brain injuries, may they not also affect the spinal cord connected with the brain? And when the expert has eliminated all other known causes which produce spinal cord degeneration, is there not warrant for his opinion that the burns caused the degeneration which now disables respondent? To this may be added these facts: Respondent was a strong, healthy person before the accident, with no evidence of spinal cord degeneration. Within a few weeks of the accident he experienced difficulty with his legs, one of the recognized symptoms of cord degeneration. Tests of the cord fluid demonstrate that syphilis is not the cause of the degeneration. Other tests eliminate other causes such as pernicious anaemia and locomotor ataxia. We also believe the commission was authorized to conclude from the medical testimony that the tumor of the stomach is not cancer and there-

fore not the cause of the degeneration of the cord. Relators, of course, claim the tumor to be malignant. This cannot be demonstrated without a sample of part of the tumor for miscroscopic examination. As opposed to relators' claim, we have the opinions of the medical experts of respondent that the tumor is benign and not cancerous, because there has not been the speedy progress toward a fatal result usual with malignant tumors; in fact, the evidence shows that respondent has gained in weight and is improving in health, if we except the disability due to the condition of the spinal cord. It must be admitted that notwithstanding the great progress made in medical science the origin or cause of many human ills is obscure. However, in diagnosing or treating them the doctor must make such deductions as reason, knowledge, and experience lead to. Sequence of time between injury and symptoms of a disease in a previously strong and healthy person often indicates to the observing doctor a probable connection, and when taken in connection with other facts in the light of medical science leads to a dependable conclusion.

The attorneys on both sides appear to have no disagreement on any principle of law applicable to this case, for no authorities whatever are cited except these two by respondent, Jones v. Excelsior Laundry Co. 183 Minn. 521, 237 N. W. 419, and Krueger v. King Midas Mill. Co. 169 Minn. 153, 210 N. W. 871; both to the point that the finding assailed must stand unless manifestly contrary to the evidence, a proposition not questioned by relators. So the issue here is: Does the evidence justify the finding that the burns received in the accidental injury caused the combined spinal cord degeneration which now disables respondent? Needless to say, this must be determined upon the testimony of medical experts. We think the opinions of respondent's medical experts are so well fortified by findings derived from observation, tests, symptoms of the patient, and relevant facts that the industrial commission could well conclude theirs to be the more reliable. To further discuss the opinions of the experts and the theories and findings on which they are based would be of no use to future litigants.

The decision of the industrial commission is affirmed, with $100 attorney's fees to be taxed as costs herein in favor of respondent.