## GERTRUDE REYNOLDS v. CITIES SERVICE OIL COMPANY AND ANOTHER.[1]

January 15, 1937.

No. 30,976.

*Stearns, Stone & Mackey,* for relators.
*Burton R. Sawyer* and *K. A. Campbell,* for respondent.

LORING, JUSTICE.

*Certiorari* to review a decision of the industrial commission awarding petitioner, the widow of Roscoe Reynolds, compensation for his death.

Reynolds was a filling station attendant employed by relator Cities Service Oil Company at one of its gasolene stations in Northfield. His work required him to do lifting, work under hoists, climb in and out of grease pits, and the other work usually performed by filling station attendants. He had fulfilled his duties satisfactorily from the fall of 1933, when he was first employed by relator, to January 4, 1934. For about one and one-half years previous to taking the position with the Cities Service Company he had done similar work for another oil company. He was 41 years old.

[1]Reported in 270 N. W. 912.

January 4, 1934, while working in the relator's station, he suffered a fall and struck his back against a doorsill. A red bruise appeared at a spot to the right of the spine. His statement to the insurer describing the fall said that he had slipped on some oil and water that had run onto the floor. Witnesses who observed him immediately after the fall said that it was apparent that he was suffering pain in his back and was in evident distress.

Reynolds kept on working for about five or six weeks but had an increasing stiffness of the spine. February 28, 1934, he called a doctor, and a swelling in the right lumbar region of the back was discovered. March 6, 1934, this was found to be an abscess which admittedly was caused by a tuberculous spine. In May, 1934, X-rays showed an acute destructive Pott's disease (tuberculosis of the spine) involving several dorsal vertebrae. Reynolds became increasingly worse, and March 15, 1935, he died.

Deceased had been afflicted with a tuberculous spine several years previous to the date of his fall. Petitioner contends that the disease was in a dormant state, that the fall of January 4 lighted up or accelerated the dormant disease and was a factor contributing to the death of her husband. It is relator's contention that the fall of January 4 was the result of a tuberculoma in the brain which had affected the motor tracts and that the fall was not the cause lighting up the disease but was the result of an active case. Relator maintains that its contention is substantiated by the fact that on the second day after the fall Reynold's use of his right hand became impaired.

An autopsy showed that tuberculosis was present in many parts of decedent's body. It also disclosed a large tuberculoma of the brain which would affect the motor nerves. Whether the tuberculoma of the brain was present at the time of the fall and caused it is a disputed question. There is expert medical testimony that it did so exist.

The single question presented to us is whether or not there was sufficient evidence to support the commission's conclusion that the fall and consequent blow to Reynolds' back lighted up an existing but dormant tubercular condition and contributed to his death.

Reynolds had performed his usual duties around greasing and filling stations for five or six years, had attended the furnace at home, shoveled sidewalks, played ball, and was generally active up to January 4, 1934. He appeared to be in good health.

Petitioner's medical expert, Dr. Bulkley, testified that from the history of the deceased's case it was his opinion that the tuberculous spine was present but in a quiescent or arrested state. Dr. Chatterton testified that in his opinion the disease was probably dormant and:

"It is my opinion that a tuberculous disease of the spine is never cured, it is only arrested, and the arrest depends upon what material grows around the diseased area, whether it is bone or fibrous tissue or whatever it is. Now, then, even just activity of work may be enough to break down this little material that grows around the tuberculous disease or often an injury may break down this bone or fibrous tissue * * * I might say the interesting thing about this situation that is valuable, in my opinion, is the fact that it did not begin for about six weeks from the time of injury, which gave the tuberculosis a chance to get started and cause an abscess outside of the diseased area."

One of the doctors testified that the Pott's disease could not be active to any great extent and the patient remain ignorant of its activity. The doctor also testified:

"I don't think anyone could honestly say that [the blow] certainly activated his tuberculosis, but I would say it probably did if his history was correct, particularly with his relatively latent period between the time of his blow and the period the activity became manifest."

As stated above, Reynolds seemed to be in good health and continued to work for five or six weeks after the fall but had an increasing stiffness in the back. Early in February he began taking treatments for his back but became increasingly worse. There was evidence given by relator's doctors that the tuberculoma of the brain had existed previous to the fall. On the other hand, petitioner's medical expert stated that when tuberculosis actively in-

vades the brain it is "pretty rapid fire, it is usually 21 to 30 days after he gets the tuberculosis disease that he dies."

Outward symptoms of the brain tuberculoma were not manifest (other than the claimed impairment of the use of the right hand) until November, 1934. One of relator's doctors testified that the tuberculoma might have developed only a few weeks before the outward manifestations. Another witness for relator disputed that point.

We have, therefore, a man admittedly tubercular for several years. Quite conclusively proved was the fact that up to January 4, 1934, he was employed and satisfactorily filling a position requiring sustained activity. He was also active outside of his work. Expert opinion was that it would have been "unusual" for one with a tubercular brain to carry on the duties required of Reynolds. Two competent medical men stated it as their opinion that the disease was quiescent at the time of the fall. That the deceased suffered a fall on January 4 is undisputed. Within a period when the activity of the disease might manifest itself the abscess on the back appeared. The possibility that the disease was lighted up by a trauma of work seems negatived by the activity of the deceased up to the time of the fall.

The commission was divided on the question of fact. We have given careful consideration to the very able dissent, but there is a different question before us than was before the commission. That body was confronted with a question of fact. We determine whether there was such a question. We are of the opinion that there is sufficient evidence to sustain the commission. See Halper v. Golden Rule, 180 Minn. 477, 231 N. W. 195; Sorenson v. La Pompadour, Inc. 190 Minn. 406, 251 N. W. 901; Walker v. Minnesota Steel Co. 167 Minn. 475, 209 N. W. 635; Gaetz v. City of Melrose, 155 Minn. 330, 193 N. W. 691.

Respondent is allowed $100 attorneys' fees in this court.

Affirmed.

MR. JUSTICE PETERSON, not having been a member of the court when this case was argued and submitted, took no part in its consideration or decision.