ULPIANO VÉLEZ AS ACTING MANAGER OF THE STATE INSURANCE FUND, Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, ETC., Respondent; HEIRS OF TOMÁS MARRERO, Claimants.

No. 455. Argued February 1, 1952.—Decided February 28, 1952.

*Ángel de Jesús Matos* and *Donald R. Dexter* for appellant. *Rogelio Fernández Garzot* for claimants.

MR. CHIEF JUSTICE TODD, JR., delivered the opinion of the Court.

We granted the petition of the Manager of the State Insurance Fund to review a decision of the Industrial Commission of Puerto Rico which, reversing a decision of the Manager, declared that the death of Tomás Marrero Delgado, a workman, was compensable. The facts, as to the

accident sustained by the workman, are not in controversy, and follow:

On April 24, 1948, Tomás Marrero Delgado was operating a caterpillar tractor hauling cane cars for his employer Sosthenes Behn. The tractor fell in a ditch which the driver was unable to see and the workman fell against the handles injuring his chest.

From the day of the accident, April 24, 1948, until the day he died, October 7, 1949, the workman could not go back to work. According to the death certificate the workman died of pulmonary tuberculosis.

The conflict in the instant case turns on the fact of whether or not the chest injuries sustained by the workman as a result of the accident he suffered on April 24, 1948, aggravated the pulmonary tuberculosis with which he was afflicted at the time. The evidence of the medical experts who testified before the Industrial Commission at the hearing held in this connection was conflicting. It must be set out that the only experts who testified were Drs. Jacobo Simonet and M. García Estrada, physicians of the State Insurance Fund, and Dr. H. Vázquez Milán, medical counselor of the Industrial Commission, the latter as a witness for the beneficiaries of the deceased workman. This is not, therefore, a case in which the workman's beneficiaries utilized as a witness a medical expert furnished by them to support a theory different from that of the experts of the Fund and of the Commission.

As appears from the original record sent up, this case was instituted by the workman upon appealing to the Industrial Commission from the decision of the Manager of the Fund, delivered July 9, 1948, which insofar as pertinent. reads:

"The workman was examined and subjected to medical treatment by the State Fund. An X-ray was taken of his chest and he was referred for examination to Dr. J. Simonet.

This physician made a physical examination of the workman and fluoroscopic and radiographic examinations of the thorax on April 30, 1948. On account of said examination, the aforesaid physician gave his opinion stating that the workman suffers from chronic bilateral pulmonary tuberculosis moderately advanced with productive infiltration towards the right infraclavicular region and the left vertex. He was of the opinion that this condition has no relation to the alleged accident nor was it aggravated thereby. Examined again by said physician on June 2, 1948, the latter ratified his previous opinion.

"In view of the medical opinion expressed in this case, the Manager of the State Insurance Fund decides that the workman recovered and has no incapacity from his alleged accident, and furthermore decides that the tubercular condition with which the workman is afflicted has no relation to his alleged accident nor was it aggravated thereby, and this not being one of the cases of tuberculosis contemplated by § 3–A of the Workmen's Compensation Act now in force, the case is closed and dismissed."

The workman was examined by Drs. J. Cordero and H. Vázquez Milán, medical counselors of the Commission, and on September 14, 1948, they submitted a report which, also insofar as pertinent, recites:

"The undersigned physicians examined on this date the injured workman and the record of the S.I.F., and we find that from the moment of the accident the workman claimed that he had expectorated blood as the result of the trauma to the upper part of the thorax, and after looking over the reports from the Oriente Clinic we find that on April 26, namely, within 48 hours after the accident and during his stay in said hospital, the workman expectorated blood. In these conditions we think that it is convenient to hold a public hearing to which, besides Dr. Simonet, Dr. César Domínguez, of the Oriente Clinic of Humacao, should be summoned to determine the possible aggravation of the tuberculosis from which the workman suffers due to the injury to the chest."

It does not appear from the record that any action was taken in the case until November 5, 1949, when the workman's attorney, appearing on behalf of the Heirs of Tomás

Marrero Delgado, notifies the Commission that the latter died on October 7, 1949, and requests that the case be remanded to the State Insurance Fund to substitute the claimant and for the dependents of the deceased workman to be granted the proper compensation. The Commission complied with his request on November 17, 1949, and on February 13, 1950, the Manager of the Fund entered another decision denying compensation on the ground that the death of the workman "was not due to any labor accident, nor is there any relation between the alleged accident and the death of the workman." On February 20, 1950, the case was again appealed to the Commission and it was not until August 8 and 9, 1951, that the public hearings were held before the Industrial Commission, the case being decided November 1 of that year. We have set forth these facts because, even realizing the arduous task pressing the Commission, we have found nothing in the record to justify the delay in the prosecution of this case to the prejudice of the beneficiaries.

In deciding the case, the Commission, after summing up the evidence, stated as follows:

"We do not doubt that the trauma received by the workman to his chest was violent, and we are called upon to decide only whether or not said trauma aggravated his idiopathic condition to the point of causing his death a year, five months and thirteen days later, (October 7, 1949).

".    .    .    .    .    .    .    .

"There was some scientific disquisition between the physicians of the Manager as to the possibility that the workman's bloody expectoration within 48 hours after the accident, was not from the lungs, but there is no basis whatsoever of a probative value to support the contrary, and in this situation, taking into consideration the circumstances of this case, we think that such bloody expectoration was from the lungs.

"The experts of the Manager gave some importance to the time elapsed between the accident and the date of the workman's death, because, they claim, it is estimated in Puerto Rico that a person having tuberculosis in the workman's condition,

had only an average span of life of from one to two years, but we have found no medical authority on this point definitely accepting said postulate, especially in the case of a tubercular patient 34 years old, at the date of his death, which occurs a year and five months after receiving a severe trauma to his chest.

"Duly weighing the evidence in this case in harmony with the philosophy which inspired this legislation, and pursuant to the decisions of our courts, in cases of this nature, we at least hold a serious doubt as to the causal relation between the accident sustained by the workman on April 24, 1948, and his death on October 7, 1949, and that doubt must favor the beneficiaries."

Consequently, the Commission decided that Tomás Marrero Delgado's death was due to the aggravation of his pretuberculous condition because of the accident.

The Manager of the Fund herein contends that the Commission erred in the weighing of the expert evidence and in declaring that the case was compensable on the basis of the aggravation of the workman's pulmonary tuberculosis.

Undoubtedly the decision of the Industrial Commission was based on the testimony of Dr. Vázquez Milán, its medical counselor. From said testimony we quote:

"The workman suffered an accident on April 24, 1948, which was accepted by the State Fund, and I am unaware of what treatment he received in connection with said injury to the chest. I only know the diagnosis: chronic pulmonary tuberculosis, moderately advanced, made on April 30 by Dr. Simonet, who sent him home to rest until June 2; and on the basis of this opinion the Manager discharges him as cured and without incapacity on June 9, 1948, denying the causal relation and the aggravation of his pulmonary tuberculosis.

"As we had the opportunity to examine the workman and to ask him some questions on September 14, 1948, when we saw him at a medical hearing, we requested in our medical report, which is found in the record of this Hon. Commission, information from the clinic where the workman was hospitalized, *regarding other details besides X-rays, since we have often stated in this Hon. Commission that not only X-rays present clear and categoric evidence of a possible aggravation. We*

*mean sedimentation tests, bacteriological tests of sputum and gastric residue, fever charts, and other tests which scientifically lead us on to a diagnosis,* as was required in this case.

"*A simple X-ray picture does not tell us whether there was aggravation or not; because a temperature chart can tell us to the extent that a condition may be aggravated,* and today we lack that to reach the categoric affirmation of a diagnosis, which we consign as a reasonable doubt that would benefit the workman in the instant case.

". . . And in view of the fact that no other tests were made in connection with this workman, other than X-rays, and referring to the latter I would like to point out that the first X-ray taken on April 24 in the Oriente Clinic, as well as the one taken on the 29th, that is, five days later, in the Medical Division, described the injuries which my colleague Dr. Simonet described, but from the X-rays, especially the last one taken by Dr. Simonet, *we are able to see changes in the pulmonary parenchyma,* towards the base, in density, an increase in the intercostal spaces, *which suggest that the workman's condition was progressively advancing,* wherefore the workman continued in a state of aggravation until he died a year and five months later. I do not know the treatment administered to the workman; had he been treated, we might perhaps have prevented his death. My final opinion in the case is that there is still a margin of reasonable doubt as to the death of this workman, as to the aggravation of the tuberculosis." (Italics ours.)

Dr. Simonet, physician of the State Insurance Fund, in answer to Dr. Vázquez Milán's testimony, said that he had the doubts mentioned by the latter "when I was a student," when "I needed temperature charts, sputum, sedimentation index, X-ray pictures, and many a time even the autopsy" but that after more than 20 years of practice in tuberculosis and "being with the greatest doctors in the world," if he were to need all that, "I would go and shoot myself."

In our judgment the Industrial Commission did not err in believing the testimony of its medical counselor, Dr. Vázquez Milán, despite the testimony of Drs. Simonet and García Estrada, and especially if Dr. Simonet's attitude trying to discredit Dr. Vázquez Milán is taken into consideration.

As stated in *Gray* v. *St. Croix Paper Co.*, 113 Atl. 32, 33, referring to the testimony of a medical expert, the latter's testimony "was shaken, but not destroyed; weakened, but not annihilated; torpedoed, but not sunk."

We may add, moreover, that a court deciding a case on the basis of conflicting expert testimony will necessarily be better impressed and give credit to the testimony of a medical expert who, discreetly, without verbosity and with scientific facts affirms that, because of certain facts which are not in controversy, to wit, a young workman who works normally, there is an accident and he receives an injury to his chest, he suffers from tuberculosis, is unable to work after the injury and, finally, dies of tuberculosis, said illness was aggravated as the result of the injury sustained.

On the other hand, that sedimentation tests, bacteriological tests of sputum, temperature charts and other tests referred to by Dr. Vázquez Milán are necessary besides X-rays in cases of this nature, is also maintained by Dr. Mark D. Altschule [1] in his treatise on "Trauma in Relation to Conditions of Lung and Thorax," published in 21 Indiana Law Journal 577, 616–17, upon saying:

"The question of the lighting up of latent tuberculosis or of its aggravation where overt by a blow is always difficult to settle because of the unpredictable course of the disease. If the blow or fall, by rupturing a small cavity, causes spread of disease, weeks may elapse before the manifestations become severe enough to make the patient seek medical attention. On the other hand, tuberculosis occasionally manifests rapid and unexpected spontaneous exacerbations. *Absolute proof of the relation of a blow or fall to the appearance or aggravation of tuberculosis is, in the absence of hemoptysis immediately after the accident, impossible of realization,* except in the rare case where by chance X-ray studies of the chest were made before the accident and found negative. In the absence of this rare coincidence, competent medical testimony as to the time rela-

---

[1] Of the Harvard Medical School and of the Staff of the Beth Israel Hospital of Boston.

tion between the trauma and the appearance or exacerbation of symptoms, *such as cough, fever, weight loss, weakness, a positive X-ray, etc.,* should be relied on to establish the fact that a short period, i. e., several weeks, elapsed between the two. However, if too short a period, i. e., several days, elapsed between the two, a causal relation is unlikely." (Italics ours.)

In its decision the Industrial Commission quotes the following from Schneider's Workmen's Compensation Law, vol. 5, § 1455, pp. 500, 501:

"Another situation arises when the disease antedates the injury or the exposure to unfavorable conditions. If the employee has tuberculosis in an active or dormant form, and the injury or exposure lights up or activates the disease, that constitutes a compensable injury. This is on the theory that the injury or exposure set in motion a force or disease that possibly would never have manifested its presence had it not been activated by injury or exposure. The same rule applies when there is an active tubercular condition and the injury or exposure aggravates the malady and possibly accelerates the demise of the victim. . . ."

In two cases of workmen's death due to tuberculosis we have met dissimilar situations. In *Rodríguez* v. *W. R. Commission,* 36 P.R.R. 41, wherein the workman, a baker, while working had a severe hemoptysis as the result of which he died shortly thereafter, we decided, quoting from the syllabus in the Spanish version, that "When there is ground to assume logically that the workman's illness—pulmonary tuberculosis—is of long standing, and that the workman's death was due to a hemoptysis caused by said illness, the hemorrhage itself can not be considered as the accident which caused the death."

And in *Torres* v. *Workmen's Relief Commission,* 41 P.R.R. 203, in which we decided, also quoting from the syllabus, that "Where the evidence as to the date of the accident —a fall from a tree—is conflicting and there is testimony of eye-witnesses that a hemorrhage of the lungs followed the

fall; and also evidence that at the time of the accident the workman was a strong and vigorous man, and that he died of tuberculosis a few months thereafter, in the absence of a satisfactory showing that tuberculosis had developed before the date of the accident, the inference is that it developed. thereafter in consequence thereof, and the claimant is entitled to recover compensation for the death of the workman."

The postulate advanced by Schneider, *supra*, has been upheld in numberless instances in American decisions. Among those we have examined, all of claims for labor accidents, we cite *Manhattan Const. Co.* v. *Tottress*, 17 P. 2d 407 (injury as a result of a fall which caused aggravation of a tubercular condition); *Victor Gasoline Co.* v. *Weatherman*, 21 P. 2d 35 (conflicting testimony of medical experts as to the aggravation of the injured workman); *Fraze* v. *McClelland Co.*, 205 N. W. 737 (accelerated tuberculosis as the result of an injury); *Mitaly* v. *Crofut & Knapp*, 174 Atl. 71 (conflicting expert testimony as to the cause of the tuberculosis, the court affirming the decision of the Commissioner awarding compensation and wherein it was decided, furthermore, that X-ray examinations alone can not be considered as a complete diagnosis); *Nyberg* v. *Little Falls Black Granite Co.*, 277 N. W. 536 (extreme case: the accident occurred in November 1926, injury to a knee which lighted up tuberculosis therein and pulmonary tuberculosis later, the workman dying in March 1935, and confronted by conflicting expert evidence, compensability was sustained); *Reynolds* v. *Cities Service Oil Co.*, 270 N. W. 912 (latent tuberculosis of the spine lighted up and aggravated by a fall); *Dryden* v. *Omaha Steel Works*, 26 N. W. 2d 293 (lighting up of latent pulmonary tuberculosis as the result of an accident); *Marshall* v. *C. F. Mueller Co.*, 50 A. 2d 158 (*idem*); *M. & W Mining Co.* v. *Lee*, 182 P. 2d 759 (conflicting expert evidence on the aggravation of a tubercular condition as the result of an injury, compensation sustained). See, also, *Schroeder* v.

*F. G. Shattuck Co.*, 51 N.Y.S. 2d 367; *Kolokotroni* v. *Oyster Bay Restaurant*, 96 N.Y.S. 2d 863.

We can not agree with petitioner that the Industrial Commission erred in the weighing of the expert evidence or that it committed an error of law upon concluding that the workman's idiopathic condition, pulmonary tuberculosis, was aggravated as the result of the injury to his chest the day of the accident, eventually causing his death.

Therefore, the decision appealed from will be affirmed.