ULPIANO VÉLEZ, en su carácter de ADMINISTRADOR INTERINO DEL FONDO DEL SEGURO DEL ESTADO, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada; SUCESIÓN DE TOMÁS MARRERO DELGADO, recurridos.

Núm. 455.—*Sometido:* Febrero 1, 1952. *Resuelto:* Febrero 28, 1952.

---

*Ángel de Jesús Matos* y *Donald R. Dexter,* abogados del recurrente; *Rogelio Fernández Garzot,* abogado de la Sucesión recurrida.

EL JUEZ PRESIDENTE SEÑOR TODD, JR., emitió la opinión del tribunal.

A solicitud del Administrador del Fondo del Seguro del Estado expedimos el auto en este caso para revisar la resolución de la Comisión Industrial de Puerto Rico que, revocando una decisión del Administrador, declaró compensable la muerte del obrero Tomás Marrero Delgado. Los hechos, en cuanto al accidente ocurrídole al obrero, no están en controversia, y son los siguientes:

El 24 de abril de 1948 Tomás Marrero Delgado operaba un tractor "caterpillar" arrastrando carros de caña para su patrono Sosthenes Behn, y habiendo caído dicho tractor en una zanja que no pudo ver el conductor, el obrero cayó sobre las manecillas y como consecuencia sufrió lesiones en el pecho.

Desde el día del accidente, 24 de abril de 1948, hasta el día en que murió, 7 de octubre de 1949, el obrero no pudo volver a trabajar. Según la certificación de defunción, el obrero falleció de tuberculosis pulmonar.

Toda la controversia en el presente caso gira alrededor del hecho de si las lesiones que recibió el obrero en el pecho como consecuencia del accidente que sufrió el 24 de abril de

1948 agravaron o no la tuberculosis pulmonar de que padecía en dicha fecha. La prueba de los peritos médicos que declararon ante la Comisión Industrial en la vista celebrada en cuanto a este aspecto del caso fué contradictoria. Debe hacerse constar que los únicos peritos que declararon fueron los Dres. Jacobo Simonet y M. García Estrada, médicos del Fondo del Seguro del Estado, y el Dr. H. Vázquez Milán, médico asesor de la Comisión Industrial, este último como testigo de los beneficiarios del obrero fallecido. No se trata, pues, de un caso en que los beneficiarios del obrero han utilizado como testigo a un perito médico traído por ellos para sostener una teoría distinta a la de los peritos del Fondo y de la Comisión.

Según aparece de los autos originales remitidos, este caso se inició por el obrero al apelar ante la Comisión Industrial de la decisión del Administrador del Fondo rendida el 9 de julio de 1948, la cual, en lo pertinente, dice así:

"El obrero fué examinado y sometido a tratamiento médico del Fondo del Estado. Se le tomó una placa radiográfica del pecho y referido para examen al Dr. J. Simonet. Este facultativo le practicó exámenes físico, fluoroscópico y radiográfico del tórax el día 30 de abril de 1948. Con motivo de dicho examen, el referido facultativo emitió un dictamen en el cual hace constar que el obrero padece de tuberculosis pulmonar bilateral crónica moderadamente avanzada con infiltración productiva hacia la región infraclavicular derecha y vértice izquierdo. Fué de opinión que esta condición no guarda relación con el alegado accidente ni ha sido agravada por éste. Examinado nuevamente por dicho facultativo el día 2 de junio de 1948, éste ratificó su anterior dictamen.

"Visto el dictamen médico emitido en este caso, el Administrador del Fondo del Seguro del Estado resuelve que el obrero ha quedado curado y sin incapacidad de su alegado accidente, y resuelve además, que la condición de tuberculosis que padece el obrero no guarda relación con su alegado accidente ni ha sido agravada por éste, y no siendo uno de los casos de tuberculosis previstos por el artículo 3-A de la vigente Ley de Compensaciones por Accidentes del Trabajo, se ordena el cierre y archivo de este caso."

Sometido el obrero a exámenes por los Dres. J. Cordero y H. Vázquez Milán, médicos asesores de la Comisión, el 14 de septiembre de 1948, ellos rindieron un informe que, también en lo pertinente, dice:

"Examinado el lesionado en el día de hoy por los médicos que suscriben y estudiado el expediente del F. S. E., encontramos que desde el momento del accidente el obrero hizo alegaciones de haber expectorado sangre como consecuencia del trauma en el aspecto anterior del tórax y revisados los informes de la Clínica Oriente encontramos que el día 26 de abril, o sea, dentro de las 48 horas subsiguientes al accidente y durante su permanencia en dicha institución, el obrero expectoró sangre. En estas condiciones es nuestra opinión que se hace conveniente la celebración de una vista pública a la cual deberá ser citado además del Dr. Simonet, el Dr. César Domínguez de la Clínica Oriente de Humacao, para determinar la posible agravación de la tuberculosis que el obrero padece por la contusión en el tórax."

No aparece de los autos que se tomara providencia alguna en el caso hasta el 5 de noviembre de 1949 en que el abogado del obrero, compareciendo a nombre de la Sucesión de Tomás Marrero Delgado, informa a la Comisión que éste falleció el 7 de octubre de 1949 y solicita que el caso sea devuelto al Fondo del Seguro del Estado para que se sustituya la parte reclamante y se le conceda la indemnización correspondiente a los dependientes del obrero fallecido. Así lo hizo la Comisión el 17 de noviembre de 1949 y el 13 de febrero de 1950 el Administrador del Fondo dictó otra decisión denegando la compensación reclamada por entender que la muerte del obrero "no se debió a accidente alguno del trabajo, ni existe relación entre el accidente alegado y la muerte del obrero." El 20 de febrero de 1950 se apeló de nuevo para ante la Comisión y no fué hasta los días 8 y 9 de agosto de 1951 que se celebraron las vistas públicas ante la Comisión Industrial, siendo resuelto el caso el 1ro. de noviembre del mismo año. Hemos querido relatar estos hechos porque, aun advirtiendo la ardua labor que pesa sobre la Comisión, nada encontramos

en los autos que justifique la dilación habida en la tramitación de este caso en perjuicio de los beneficiarios.

Al resolver el caso la Comisión, después de hacer un resumen de la prueba, hizo constar lo siguiente:

"No tenemos duda alguna de que el trauma que este obrero recibiera en el pecho fué violento, y nos toca resolver solamente si el mismo agravó o no su condición idiopática hasta ocasionarle la muerte un año, cinco meses y trece días después (octubre 7, 1949).

"Hubo cierta disquisición científica entre los médicos del Administrador, en cuanto a la posibilidad de que la expectoración sanguínea que tuviera el obrero dentro de las 48 horas de su accidente, no proviniera de los pulmones, pero no existe dato alguno de valor probatorio, para sostener lo contrario, y dentro de esta situación, tomando en consideración las circunstancias del caso, creemos que esa expectoración sanguínea, provino de los pulmones.

"Se dió por los peritos del Administrador, alguna importancia al factor del tiempo transcurrido entre el accidente y la fecha de la muerte del obrero, porque según dichos peritos, en Puerto Rico, se calcula que un tuberculoso en las condiciones que estaba el obrero, sólo tenía un promedio de vida de uno a dos años, pero sobre este extremo, no hemos encontrado autoridad médica que acepte en definitivo ese postulado, máxime cuando se trata de un tuberculoso de 34 años de edad, a la fecha de su muerte, y ésta ocurre un año y cinco meses después de recibir un violento trauma en el pecho.

"Pesando debidamente la prueba en este caso, dentro de la filosofía inspiradora de esta legislación, y a tenor de la jurisprudencia de nuestro foro, en casos de esta naturaleza, por lo menos abrigamos seria duda en cuanto a la relación causal entre el accidente que sufriera el obrero en abril 24, 1948, y su muerte en octubre 7, 1949, y esa duda debe favorecer a los beneficiarios."

En su consecuencia resolvió la Comisión que la muerte de Tomás Marrero Delgado se debió a la agravación de su condición pretuberculosa con motivo del accidente que sufrió.

El Administrador del Fondo en este recurso sostiene que la Comisión erró al apreciar la prueba pericial y al declarar

compensable el caso a base de agravación de la tuberculosis pulmonar de que padecía el obrero.

Indudablemente que la decisión de la Comisión Industrial tuvo como base la declaración de su médico asesor Dr. Vázquez Milán. De ella citamos lo siguiente:

"El obrero sufrió un accidente en abril 24, 1948, que le fué aceptado por el Fondo del Estado, y no sé qué tratamiento recibiría para esta contusión en el pecho. Solamente sé el diagnóstico: tuberculosis pulmonar crónica, moderadamente avanzada, hecho en abril 30 por el Dr. Simonet, y lo envía a su casa en descanso hasta junio 2; y basándose en esta opinión el Administrador lo da de alta curado y sin incapacidad en junio 9, 1948, negándole la relación causal y la agravación de su tuberculosis pulmonar.

"Como tuvimos la oportunidad de examinar al obrero y hacerle algunas preguntas en septiembre 14, 1948, que lo vimos en vista médica, hicimos constar en nuestro informe médico que obra en el expediente de esta Hon. Comisión, que se trajera información sobre la clínica en que el obrero estuviera hospitalizado, *con relación a otras cosas que no son placas radiográficas, ya que hemos mencionado en esta Hon. Comisión muchas veces que no solamente las placas radiográficas nos dicen una evidencia clara y categórica de una posible agravación. Nos referimos a los estudios de sedimentación, estudios bacteriológicos de esputo y residuo gástrico, curva de temperatura, y otros estudios que científicamente nos inducen a un diagnóstico como en este caso se requería.*

"*No es una simple placa la que nos dice si tuvo o no agravación; porque la curva de temperatura nos puede decir hasta cuánto se puede agravar una condición,* y eso no lo tenemos en el día de hoy para llegar a la afirmación categórica de diagnóstico, que consignamos en una duda razonable que beneficiaría al obrero en este caso.

". . . Y en estas condiciones de no habérsele practicado otros estudios al obrero que no fueran más que las placas, y refiriéndome a las placas voy a mencionar que la primera placa tomada en abril 24 en la Clínica Oriente, igual que la placa tomada el 29, o sea, 5 días después, en la División Médica describieron las lesiones que describiera el compañero Dr. Simonet, pero de las placas, particularmente la última que tomara el Dr. Simonet, *podemos ver cambios en el parénquima pulmonar,* hacia la base,

de densidades, aumentos en los espacios intercostales, *que nos sugieren que la condición del obrero iba progresivamente avanzando,* por cuyo motivo el obrero siguió en estado de agravación hasta que murió un año cinco meses después. El obrero no sé qué tratamiento recibiría; de haber recibido tratamiento, quizás hubiéramos evitado su muerte. Mi opinión final en el caso es que aún sigue un margen de duda razonable en cuanto a la muerte de este obrero, en cuanto a la agravación de la tuberculosis." (Bastardillas nuestras.)

El Dr. Simonet, médico del Fondo del Seguro del Estado, contestando la declaración del Dr. Vázquez Milán, dijo que las dudas que éste expresó él las tenía "cuando era estudiante", cuando "necesitaba curva de temperatura, esputo, índice de sedimentación, placas radiográficas, y muchas veces hasta la autopsia" pero que después de más de veinte años de práctica en la tuberculosis y "estar con los más grandes médicos del mundo", si él necesitara todo eso, "iba yo y me pegaba un tiro."

No erró, a nuestro juicio, la Comisión Industrial al dar crédito a la declaración de su asesor médico, Dr. Vázquez Milán, no obstante las declaraciones de los Dres. Simonet y García Estrada, y especialmente si se toma en consideración la actitud asumida por el Dr. Simonet al tratar de desacreditar al Dr. Vázquez Milán. Como se dijo en el caso de *Gray v. St. Croix Paper Co.*, 113 Atl. 32, 33, refiriéndose al testimonio de un perito médico, la declaración de éste "fué sacudida, pero no destruída; debilitada, pero no aniquilada; torpedeada, pero no hundida."

Podemos decir, además, que ante un tribunal que ha de resolver un caso a base de prueba pericial contradictoria tiene forzosamente que causar una impresión más favorable y merecerle crédito la declaración de un perito médico que, con discreción, sin ampulosidades y con datos científicos afirma que, debido a ciertos hechos que no están en controversia, a saber, un obrero joven que trabaja normalmente, ocurre un accidente y sufre una lesión en el pecho, padece de tuberculosis, desde que sufrió la lesión no puede volver a trabajar y

que, por último, muere de tuberculosis, dicha enfermedad fué agravada como consecuencia de la lesión recibida.

Por otra parte, que los estudios sobre sedimentación, bacteriológicos de esputo, curva de temperatura y otros a que se refirió el Dr. Vázquez Milán, son necesarios, además de las radiografías en casos de esta naturaleza, lo sostiene también el Dr. Mark D. Altschule [1] en su ensayo sobre *"Trauma in Relation to Conditions of Lung and Thorax"*, publicado en 21 Indiana Law Journal 577, 616–17, cuando dice:

"La cuestión de si una tuberculosis latente es activada o agravada por un golpe es siempre difícil de determinar debido al curso no pronosticable (*unpredictable*) de la enfermedad. Si el golpe o caída, por causar la ruptura de una pequeña cavidad, ocasiona que se extienda la enfermedad, semanas pueden transcurrir antes de que las manifestaciones sean tan serias que obliguen al paciente a buscar atención médica. Por otra parte, la tuberculosis ocasionalmente manifiesta exacerbaciones espontáneas rápidas e inesperadas. *Prueba absoluta de la relación de un golpe o caída con la aparición o agravación de la tuberculosis es, en ausencia de hemoptisis inmediatamente después del accidente, imposible de obtenerse,* excepto en el raro caso en que por casualidad estudios de rayos X del pecho fueron hechos antes del accidente y dieron negativo. En ausencia de esta rara coincidencia, testimonio médico competente en cuanto a la relación de tiempo entre el trauma y la aparición o exacerbación de síntomas, *tales como tos, fiebre, pérdida de peso, debilidad, una radiografía positiva,* etc., debe servir de base para establecer el hecho de que un período corto, a saber, varias semanas, transcurrió entre ambos. Sin embargo, si un período demasiado corto, a saber, varios días, transcurrió entre ambos, una relación causal es imposible." (Bastardillas nuestras.)

En su resolución la Comisión Industrial hace la siguiente cita de Schneider's *Workmen's Compensation Law*, vol. 5, sec. 1455, págs. 500, 501:

"Otra situación surge cuando la enfermedad es anterior a la lesión o a la exposición a condiciones desfavorables. Si el

---

[1] Del Harvard Medical School y del Staff del Beth Israel Hospital de Boston.

empleado tiene tuberculosis en una forma inactiva o durmiente, y la lesión o exposición revive o activa la enfermedad, eso constituye una lesión compensable. Esto es así bajo la teoría de que la lesión o exposición puso en marcha una fuerza o enfermedad que posiblemente nunca hubiera manifestado su presencia si no hubiera sido activada por lesión o exposición. La misma regla se aplica cuando hay una condición tuberculosa activa y la lesión o exposición agrava la enfermedad y posiblemente acelera la muerte de la víctima . . ."

En dos casos de muertes de obreros por tuberculosis hemos confrontado situaciones disímiles a la del presente. En el de *Rodríguez* v. *Comisión de Indem.*, 36 D.P.R. 45, en el cual el obrero, panadero, mientras trabajaba sufrió una fuerte hemorragia por la boca a consecuencia de la cual falleció pocos momentos después, resolvimos, citando del sumario, que "Cuando hay base para presumir lógicamente que la enfermedad de un obrero—tuberculosis pulmonar—data de tiempo, y que la muerte del obrero se debió a una hemoptisis causada por dicha enfermedad, la hemorragia en sí no puede considerarse como el accidente que produjo la muerte."

Y en el de *Torres* v. *Comisión Indem. a Obreros*, 41 D.P.R. 205, en el cual resolvimos, también citando del sumario, que "Cuando la prueba respecto a la fecha en que ocurrió el accidente— caída de un árbol—es contradictoria; cuando existen declaraciones, no controvertidas, de testigos oculares de que una hemorragia pulmonar siguió a la caída y existe prueba de que a la fecha del accidente el obrero era sano y vigoroso y falleció de tuberculosis pulmonar pocos meses después, en ausencia de demostración satisfactoria de que la enfermedad se desarrollara antes del accidente la inferencia es que ella se desarrolló posteriormente y como resultado del mismo y hay derecho a indemnización por la muerte del obrero."

El postulado expuesto por Schneider, supra, ha sido sostenido en innumerables casos de la jurisprudencia americana. Entre otros que hemos examinado, todos sobre reclamaciones por accidentes del trabajo, están los de *Manhattan Const.*

*Co.* v. *Tottress*, 17 P.2d 407 (golpe por caída que ocasionó agravación condición tuberculosa) ; *Víctor Gasoline Co.* v. *Weatherman*, 21 P. 2d 35 (prueba contradictoria pericial médica en cuanto a la agravación del obrero lesionado) ; *Fraze* v. *McClelland Co.*, 205 N. W. 737 (tuberculosis acelerada como consecuencia de un golpe) ; *Mitaly* v. *Crofut & Knapp*, 174 Atl. 71 (prueba pericial contradictoria sobre causa de la tuberculosis, confirmándose por la corte la decisión del Comisionado concediendo compensación y en el que se resolvió, además, que exámenes de rayos X por sí solos no pueden considerarse como un diagnóstico completo) ; *Nyberg* v. *Little Falls Black Granite Co.*, 277 N.W. 536 (caso extremo: el accidente ocurrió en noviembre de 1926, golpe en una rodilla que activó tuberculosis en ella y luego una tuberculosis pulmonar, habiendo fallecido el obrero en marzo de 1935, y ante prueba pericial contradictoria, se sostuvo la compensabilidad) ; *Reynolds* v. *Cities Service Oil Co.*, 270 N.W. 912 (tuberculosis latente de la espina dorsal activada y agravada por una caída) ; *Dryden* v. *Omaha Steel Works*, 26 N.W. 2d 293 (activación de una tuberculosis pulmonar latente como consecuencia de un accidente) ; *Marshall* v. *C. F. Mueller Co.*, 50 A.2d 158 (idem) ; *M. & W. Mining Co.* v. *Lee*, 182 P.2d 759 (prueba pericial contradictoria sobre agravación de una condición tuberculosa como consecuencia de una lesión, sosteniéndose la compensación). Véanse, además, *Schroeder* v. *F. G. Shattuck Co.*, 51 N.Y.S.2d 367; *Kolokotroni* v. *Oyster Bay Restaurant*, 96 N.Y.S.2d 863.

No podemos convenir con el recurrente en que la Comisión Industrial erró al apreciar la prueba de carácter pericial o cometió error de derecho al concluir que la condición idiopática del obrero, tuberculosis pulmonar, fué agravada como consecuencia de la lesión que recibió en el pecho el día del accidente, ocasionándole eventualmente la muerte.

En su consecuencia, *debe confirmarse la resolución recurrida.*