ULPIANO VÉLEZ, en su carácter de ADMINISTRADOR INTERINO DEL FONDO DEL SEGURO DEL ESTADO, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO y LUIS PILLOT GUAL, beneficiario del obrero occiso JORGE ANÉS PILLOT, recurridos.

Número 496.

*Sometido:* 3 de enero de 1956. *Resuelto:* 30 de abril de 1956.

284

*Donald R. Dexter* y *Aida Casañas O'Connor,* abogados del recurrente; *Ubaldo Aponte,* abogado del beneficiario.

EL JUEZ ASOCIADO SEÑOR SALDAÑA emitió la opinión del Tribunal.

Se trata del caso de un obrero que falleció como consecuencia de la enfermedad de Weil o ictericia infecciosa. Dicha enfermedad no está incluída en las que el art. 3 de la Ley de Compensaciones por Accidentes del Trabajo cataloga como "enfermedades ocupacionales" que son compensables. 11 L.P.R.A. sec. 3. Por tanto, la única cuestión que se plantea es si el obrero perdió la vida "por *accidente* (que provino) de cualquier acto o función inherente a su trabajo o empleo y (que ocurrió) en el curso de éste, y como consecuencia del mismo . . ." 11 L.P.R.A. sec. 2.

Durante varios meses antes de su muerte el obrero Jorge Anés Pillot trabajó sin interrupción al servicio del Negociado de Malaria del Departamento de Salud. Su labor consistía en limpiar canales del riego para las plantaciones de caña cerca de la costa sur de Puerto Rico y echar DDT en los mismos. En la tarde del día 23 de diciembre de 1948 el obrero interrumpió sus labores y se acostó bajo un árbol. Sus compañeros de faena encontraron que tenía fiebre alta y lo llevaron inmediatamente al hospital de Guayama. Allí se diagnosticó que padecía de la enfermedad de Weil y, a pesar del tratamiento médico a que se le sometió, falleció como consecuencia de la misma el 8 de enero de 1949.

El Administrador del Fondo del Seguro del Estado denegó la reclamación del único beneficiario, que es el padre de Jorge Anés Pillot, resolviendo que la muerte no se debió a accidente alguno del trabajo. De esta decisión apeló el reclamante, y después de celebrarse la correspondiente vista pública, la Co-

misión Industrial en agosto 10 de 1954 revocó la decisión del Administrador. Este solicitó reconsideración y con fecha 7 de diciembre de 1954 la misma fué declarada sin lugar con el voto disidente del Comisionado Sr. Enrique Campos del Toro.

 La prueba pericial demostró que la enfermedad de Weil es de naturaleza infecciosa y generalmente se contrae tomando agua o comiendo alimentos que están infectados por el parásito (leptospira icterohemorrhagiae) que es el agente causal de la enfermedad. También se puede adquirir a través de una abrasión o cortadura en cualquier parte del cuerpo que entre en contacto con alguna materia infectada.[1] La contaminación del agua o de los alimentos generalmente se produce por ratas infectadas con el género de espiroquetas que causa la ictericia infecciosa y que las eliminan con la orina. Las aguas de los canales para el riego de la caña, sobre todo las que están estancadas y tienen limo, están a menudo contaminadas o infectadas con dichos parásitos porque precisamente en los cañaverales abundan las ratas que son los más importantes transmisores de la ictericia infecciosa. Sin embargo, también los perros, los cerdos y el ganado vacuno pueden ser portadores de la referida infección y transmitir la enfermedad de Weil que tiene un período de incubación de ocho a doce días y es mortal en aproximadamente cinco por ciento de los casos. Cecil and Loeb, (Editores) *Textbook of Medicine*, Novena ed., págs. 126 y sigtes., 384 y sigtes.

Tomando en cuenta el período de incubación, es imposible determinar, a base de la prueba presentada, en qué momento preciso y en qué forma exacta el obrero fallecido contrajo la ictericia infecciosa que le causó la muerte. Las partes estipularon "que Jorge Anés Pillot no sufrió golpe ni caída ni accidente alguno en su trabajo". Además se presentó prueba de que el obrero era una persona saludable y de que no pade-

---

[1] Se cree que la vía de entrada de los parásitos que causan la enfermedad de Weil y otras infecciones análogas es el sistema respiratorio o el gastrointestinal, "aunque concebiblemente pueden penetrar a través de cortaduras o abrasiones de la piel". Cecil and Loeb (Editores) *Textbook of Medicine*, novena ed., 1955, págs. 126 y sigtes.

cía de ninguna otra enfermedad antes de los sucesos. La prueba pericial, que consistió en el testimonio del Dr. Rivera Bruno, fué en el sentido de que el obrero pudo haber contraído la enfermedad en el curso de su trabajo (tomando agua contaminada o a través de cualquier grieta o cortadura que tuviese en sus manos) pero que también pudo haberla contraído fuera del trabajo. Sin embargo, la Comisión Industrial resolvió que "aunque no existe prueba directa en cuanto a si dicha infección fué contraída el mismo día y en el sitio en que trabajaba el obrero, el balance de probabilidades (es) que dicha infección la contrajo el obrero en el curso y como consecuencia de su trabajo, dado el riesgo peculiar del sitio y forma en que trabajaba . . ." Sobre esa única base llegó la Comisión Industrial a la conclusión adicional de que la infección en el caso de autos constituía un *accidente* del trabajo.

Creemos que la Comisión cometió error. Para que la contracción de una enfermedad infecciosa pueda ser calificada de *accidente* no basta que ocurra en el curso y como consecuencia del trabajo. De lo contrario estaríamos añadiendo a la lista de enfermedades ocupacionales no sólo la ictericia infecciosa sino además todas las enfermedades causadas por microbios o parásitos que concebiblemente pueden adquirirse en el trabajo: desde la viruela, la sífilis y la meningitis hasta el catarro ordinario. Y, como ya hemos advertido, la Ley de Compensaciones por Accidentes del Trabajo no establece un seguro de vida y de salud ni tampoco el Administrador del Fondo del Seguro del Estado cobra primas a los patronos para cubrir esos riesgos.

Ante todo conviene consignar que no basta una suposición o conjetura para establecer la relación causal entre la enfermedad infecciosa y el empleo. El hecho esencial de que la enfermedad surgió en el curso y como consecuencia del trabajo tiene que probarlo el reclamante en forma competente y digna de crédito. Obviamente esta relación es muy difícil de probar cuando se trata de enfermedades infecciosas. Véase 1 Larson's *Workmen's Compensation Law*, sec. 40.60.

Pero esto no puede alterar la carga de la prueba ni eliminar la necesidad de establecer dicha relación causal como condición previa a toda compensación. En el caso de autos no hubo prueba pericial positiva de que la infección se contrajo en el curso y como consecuencia del trabajo. La Comisión se apoya para llegar a su conclusión sobre la relación causal en un "balance de probabilidades" y admite que no hubo "prueba directa en cuanto a si la infección fué contraída el mismo día y en el sitio en que trabajaba el obrero". Esto último demuestra que no se tomó en cuenta el período de incubación de la enfermedad. Además las ratas que viven en los cañaverales podían infectar no sólo el agua de los canales, sino también los alimentos que el obrero comía y el agua que tomaba fuera del trabajo. Sin embargo, a los fines de este caso, no tenemos que intervenir con la apreciación de la prueba pericial que hizo la Comisión sobre el hecho esencial de la relación causal. Véase 11 L.P.R.A. sec. 12; *Vélez* v. *Com. Industrial*, 73 D.P.R. 181 (1952). Cf. *Ortega* v. *Com. Industrial*, 73 D.P.R. 191, 194 (1952) y *Montaner* v. *Com. Industrial*, 54 D.P.R. 722, 725 (1939). Aun suponiendo que el obrero contrajo la ictericia infecciosa en el curso y como consecuencia de su trabajo, no se justifica la conclusión adicional a que llegó la Comisión en este caso, a saber, que se trata de un "*accidente*" del trabajo.

Aunque no exista una distinción científica entre "accidente" y "enfermedad", nuestro estatuto nos impone la obligación de hacerla a los fines prácticos de fijar en qué casos hay derecho a compensación. En general, para que exista un "accidente": (1) la lesión o muerte tiene que haber sido ocasionada por un suceso inesperado, súbito y fortuito, y (2) el origen de la lesión o de la muerte tiene que precisarse razonablemente en cuanto a una fecha, lugar y ocasión definidos. *Salazar* v. *Comisión Industrial*, 76 D.P.R. 108, 112–113 (1954). Estos dos requisitos en verdad se deducen del significado que de ordinario tiene el término "accidente" en nuestro idioma. Sólo el buen sentido puede precisar cómo

han de aplicarse en el sinnúmero de situaciones concretas que pueden surgir en la realidad. Cf. *Atiles* v. *Comisión Industrial*, 74 D.P.R. 951, 957–958 (1953).

Cuando se trata de enfermedades infecciosas, creemos que no puede existir un "accidente" si los microbios o parásitos penetran en el organismo humano a través del sistema respiratorio o del gastrointestinal, o por cualquier otra vía normal y natural, sin que pueda atribuirse la infección a un traumatismo o lesión de los tejidos por agentes mecánicos que en sí constituya algo inesperado, súbito y fortuito y que permita fijar dentro de límites razonables la fecha, lugar y ocasión en que se originó la enfermedad. Véanse *Simon* v. *Fine*, 74 A.2d 674 (Pa. 1950); *Hoffman* v. *Consumers Water Co.*, 99 P.2d 919 (Idaho 1940); *Loudon* v. *H. W. Shaull & Sons*, 13 A.2d 129 (Pa. 1940); *Basil* v. *Butterworth Hospital*, 262 N. W. 281 (Mich. 1935); *Industrial Commission* v. *Cross*, 136 N. E. 283 (Ohio 1922). Rechazamos por incorrecta la regla que rige en algunos estados en el sentido de que existe una enfermedad infecciosa "accidental" por el mero hecho de que los microbios o parásitos penetraron en el organismo humano a través de cualquier rasguño o pequeña cortadura en la piel. Véase 1 Larson, supra, secs. 40.20, 40.30 y los casos allí citados. Cf. *Connelly* v. *Hunt Furniture Co.*, 147 N. E. 366 (N. Y. 1925); *Smith's Case*, 30 N. E.2d 536 (Mass. 1940); Notas en 11 A.L.R. 790, 20 A.L.R. 4, 39 A.L.R. 871 y 57 A.L.R. 631. A nuestro juicio, la determinación de si una enfermedad infecciosa es compensable como "accidente" no puede depender de un factor tan insignificante. Además consideramos que es inaplicable a las enfermedades infecciosas la teoría de la "exposición o causa inusitada o inesperada", según la cual el riesgo adicional a que está expuesto un trabajador por razón de una labor especial—a que no están expuestas otras personas que no realizan la misma actividad— constituye en cierta forma un "accidente" que hace compensable la enfermedad. Cf. *Industrial Comm.* v. *Corwin Hos-*

*pital*, 250 P.2d 135 (Colo. 1952) ; 1 Larson, supra, sec. 40.50 y los casos allí citados.

Nada en la prueba que tuvo ante sí la Comisión en el caso de autos demuestra que el obrero fallecido contrajo la enfermedad de Weil por razón de un traumatismo que en sí fué algo inesperado, súbito y fortuito. Tampoco puede fijarse en forma alguna la fecha, lugar y ocasión en que se originó la enfermedad. Dicho en otras palabras, aquí la ictericia infecciosa no se contrajo como resultado de un evento inesperado, súbito y fortuito que causó violencia en el cuerpo del obrero fallecido. La mera posibilidad o conjetura de que el obrero pudo haber adquirido la enfermedad de Weil a través de una pequeña cortadura en sus manos o tomando agua contaminada en el trabajo, no es suficiente para que pueda calificarse lo sucedido como un "accidente". La ictericia infecciosa en verdad constituye una enfermedad ocupacional típica de las personas que trabajan en labores de limpieza de canales y alcantarillas y también de los cortadores de caña en áreas que se inundan. Zinsser's *Textbook of Bacteriology* (Décima edición) 1952, pág. 615; Bergmann y otros, Tratado de Medicina Interna (1947), págs. 1082 y siguientes. Corresponde al poder legislativo, si así lo cree conveniente, enmendar la ley para incluir la ictericia infecciosa entre las enfermedades ocupacionales que son compensables. En resumen: resolvemos que en el caso de autos no ocurrió ningún "accidente" que pueda dar derecho a compensación y que, por el contrario, la infección con los parásitos que producen la enfermedad de Weil era precisamente uno de los riesgos normales e inherentes de la labor que desempeñaba el obrero fallecido; en otras palabras, una *"enfermedad ocupacional"*, en todo el rigor del concepto, que no es compensable pues el legislador la excluyó de la lista que aparece en el art. 3. Véanse *Salazar* v. *Comisión Industrial*, supra, págs. 116–117 y 1 Larson, supra, pág. 600.

*Debe revocarse la resolución recurrida.*

El Juez Asociado Sr. Belaval concurre con los resultados.

El Juez Asociado Sr. Negrón Fernández disintió.